IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REGINA SMITH,

    *Plaintiff,*

vs.

    Case No. 22-CV-2495-EFM

USD 480 LIBERAL, et al,

    *Defendants.*

**MEMORANDUM AND ORDER**

    Before the Court is Defendants Randi Jones's and USD 480 Liberal's Partial Motion to Dismiss (Doc. 6). In their Motion, Defendants seek to dismiss Count I of Plaintiff Regina Smith's Complaint. Defendants first argue that Plaintiff's Count I claims are barred by the two-year statute of limitations set forth in K.S.A. 60-513(a). Defendant USD 480 further argues that Plaintiff's Count I claims against it are not viable because the Complaint fails to establish its municipal liability. Because Plaintiff's claims are subject to the four-year statute of limitations set forth in § 1658, the Court denies Defendants' Motion in part. But because Plaintiff does not plausibly allege an official policy or custom at USD 480 to establish its municipal liability, the Court grants Defendants' Motion in part.

## I.        Factual and Procedural Background[1]

Plaintiff brings two counts of racial discrimination and retaliation before the Court.  In Count I, Plaintiff claims Defendants violated 42 U.S.C. §§ 1981, 1983, and 1988.  These claims arise out of the various alleged actions that occurred during her employment as an art teacher for Eisenhower Middle School ("EMS").  While working there, Plaintiff was supervised by EMS Principal, Defendant Jones.  EMS is within the district of Defendant USD 480.  Upon Plaintiff's information and belief, USD 480 gave Jones final decision-making authority over teacher evaluations, employee grievances, and contract renewal decisions.

Plaintiff first began working at EMS under a 2017–2018 teaching contract during which she received a positive performance evaluation.  Her contract was renewed for the 2018–2019 school year.  Most teachers at EMS during this time were Caucasian whereas Plaintiff was one of only two African American teachers.  During her employment, Plaintiff alleges that she experienced extreme difficulties with students.  These difficulties included students making crude remarks about Plaintiff's afro-textured hair and race, as well as students engaging in degrading contact with the Plaintiff.

Plaintiff emailed Jones about an instance in which she alleged two students had assaulted her by trying to grab her hair in May 2018.  In this email, with the subject line "Racial Harassment," Plaintiff shared that she did not feel safe because she was being harassed based on her race.  Plaintiff alleges her complaints were brushed off and that she was blamed for mismanaging her classroom, including receiving "unsatisfactory" marks for "classroom environment" in her January 31, 2019 performance evaluation.

---

[1] The facts are taken from Plaintiff's Complaint and are considered true for purposes of this Order.

A few months later, Plaintiff alleges that EMS staff performed a racially insensitive skit at a faculty meeting that perpetuated racial stereotypes. Plaintiff and another teacher complained about this skit, but Plaintiff alleges EMS did nothing serious about it. This, and continued discriminatory acts by her students, prompted Plaintiff to file a Charge of Discrimination with the Kansas Human Rights Commission on March 12, 2019. Plaintiff also filed a grievance with Jones raising concerns about the discrimination by her students and co-workers as well as her January 2019 performance evaluation. Jones responded to the grievance, indicating that nothing would be done to address Plaintiff's concerns.

Jones later emailed Plaintiff, stating that her teacher contract would not be renewed for the 2019-2020 school year on May 5, 2019. Plaintiff filed another Charge of Discrimination on August 22, 2019, alleging that the nonrenewal of her contract was retaliatory. The Equal Employment Opportunity Commission issued right to sue letters on both of Plaintiff's Charges on September 1, 2022. Plaintiff subsequently brought this suit against both Jones and USD 480. Now, both Defendants bring the instant Partial Motion to Dismiss.

## II.    Legal Standard

A defendant may move to dismiss a claim where the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims and the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and construe them in a light most favorable to the plaintiff.[6] But the court need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then a plaintiff has 'not nudged their claims across the line from conceivable to plausible.' "[9]

### III.   Analysis

In their Motion, Defendants first argue that Plaintiff's Count I claims are barred by the two-year statute of limitations set forth in K.S.A. 60-513(a). Plaintiff argues her claims are instead subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658 and are not yet barred. Even if timely, Defendant USD 480 further argues that Plaintiff's Count I claims against it are not viable because the Complaint fails to establish its municipal liability. The Court examines each argument in turn.

---

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *Id.*

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

A.     **Statute of Limitations**

The four-year statute of limitations set forth in § 1658 applies to Plaintiff's Count I claims. A statute of limitations defense may be resolved in a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished."[10] Plaintiff's primary claim[11] in Count I alleges § 1981 violations, which are enforced through a § 1983 civil action for deprivation of rights.[12] But neither § 1981 nor § 1983 specifies the applicable statute of limitations.[13] Recognizing this issue, Congress passed § 1658 in 1990, "a catchall 4–year statute of limitations for actions arising under federal statutes enacted *after* December 1, 1990."[14] Therefore, the proper statute of limitations for Plaintiff's Count I claims rests on whether her claims derive from a federal statute only available to her after December 1, 1990.[15]

The proper statute of limitations for a § 1981 action is often disputed due to § 1981's legislative history. Section 1981 was originally enacted as a part of the Civil Rights Act of 1866.[16] Before 1990, federal courts turned to state personal injury statutes for the applicable statute of

---

[10] *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 866 (10th Cir. 2023) (citations omitted).

[11] Plaintiff also invokes § 1988 in Count I. Section 1988 simply supplements a § 1981 claim by providing that such a claim "shall be exercised and enforced in conformity with the laws of the United States" and permitting a court to award "a reasonable attorney's fees" to a § 1981 claimant.

[12] *See Bolden v. City of Topeka*, 441 F.3d 1129, 1136–37 (10th Cir. 2006).

[13] *See* 42 U.S.C. §§ 1981, 1983.

[14] *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (emphasis added).

[15] *Id.* at 382 ("We conclude that a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment.").

[16] *Id.* at 372 ("The original version of the statute . . . was enacted as § 1 of the Civil Rights Act of 1866, 14 Stat. 27.").

limitations for § 1981 claims as no federal statute applied to these claims.[17] For cases in Kansas, the statute of limitations would be two years under K.S.A. § 60-513(a).[18] Prior to 1991, § 1981 read:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to *make and enforce contracts*, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.[19]

In 1990, the Supreme Court ruled in *Patterson v. McLean Credit Union*[20] that the pre-amended version of § 1981 "expressly prohibits discrimination only in the making and enforcement of contracts" and did not protect discriminatory harassment or conduct occurring after contract formation.[21] Subsequently, a majority of circuits extended this rule, holding that discriminatory termination or nonrenewal of a contract is not actionable under the pre-amended version of § 1981 because these actions take place after contract formation.[22] The Tenth Circuit also held that discriminatory discharge claims are not actionable under the pre-amended version of § 1981.[23]

---

[17] *See Owens v. Okure*, 488 U.S. 235, 239 (1989) ("To fill this void, for years we urged courts to select the state statute of limitations 'most analogous' and 'most appropriate' to the particular § 1983 action") (citations omitted).

[18] *See Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (concluding prior to the enactment of § 1658 that "the appropriate statute of limitations for § 1983 actions arising in Kansas is two years, under . . . § 60-513(a)(4)") (citation omitted).

[19] *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989) (emphasis added) (citation omitted).

[20] 491 U.S. 164 (1989).

[21] *Id.* at 176–77.

[22] *See Gonzales v. Home Ins. Co.*, 909 F.2d 716, 722 (2d Cir. 1990); *Williams v. First Union Nat'l Bank of N.C.*, 920 F.2d 232, 234 (4th Cir. 1990); *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 807–08 (5th Cir. 1990); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (holding that non-renewal of a contract is not actionable under the pre-amended version of § 1981), *cert denied*, 501 U.S. 1261 (1991), *McKnight v. Gen. Motors Corp.*, 908 F.2d 104, 108–09 (7th Cir. 1990); *Overby v. Chevron USA, Inc.*, 884 F.2d 470, 473 (9th Cir. 1989); *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1535 (11th Cir. 1990).

[23] *Trujillo v. Grand Junction Reg'l Ctr.*, 928 F.2d 973, 975–76 (10th Cir. 1991).

In 1991, Congress responded to *Patterson* by amending § 1981's equal right to make and enforce contracts to include the same rights in "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[24] The original language of the statute, however, was maintained in the amendment.[25] In *Jones v. R.R. Donnelley & Sons Co.*,[26] the Supreme Court held that this amendment created new causes of action for plaintiffs to pursue under § 1981—claims for racial discrimination and harassment occurring after contract formation.[27] The modern majority of courts, including the Tenth Circuit, continue to hold that discriminatory actions occurring post-contract formation are not actionable under the pre-amended version § 1981 and accordingly apply § 1658's four-year statute of limitations to such claims.[28]

To be clear, a present-day § 1981 claim is not automatically subject to § 1658's four-year statute of limitations by virtue of being filed after 1991.[29] Rather, § 1658 applies only if a plaintiff's § 1981 claim was made possible by the 1991 amendment.[30] If a present-day § 1981

---

[24] 42 U.S.C. § 1981(b) (effective Nov. 21, 1991).

[25] *See id.* § 1981(a).

[26] 541 U.S. 369 (2004).

[27] *Id.* at 373.

[28] *See Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 318 n.8 (1st Cir. 2016) (noting that § 1981 hostile work environment claims, which occur post-contract formation, are bound by § 1658's four-year statute of limitations); *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017) (noting that a § 1981 discrimination and retaliation claim, which occurred post-contract formation, is bound by § 1658's four-year statute of limitations); *Chambers v. N. Carolina Dep't of Just.*, 66 F.4th 139, 143 (4th Cir. 2023); *Belton v. GEO Grp., Inc.*, 2021 WL 5832953, at *4 (5th Cir. 2021); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) (applying § 1658's four-year statute of limitations to a § 1981 hostile work environment claim, which occurred post-contract formation); *DJM Logistics, Inc. v. FedEx Ground Package Sys., Inc.*, 39 F.4th 408, 413–14 (7th Cir. 2022); *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1007 (9th Cir. 2011) (holding that a § 1981 retaliation claim, which occurred post-contract formation, is bound by §1658's four-year statute of limitations); *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1152–53 (10th Cir. 2008) (applying § 1658's four-year statute of limitations to a hostile work environment claim, which occurred post-contract formation); *Baker v. Birmingham Bd. Of Educ.*, 531 F.3d 1336, 1337–38 (11th Cir. 2008).

[29] *See, e.g. Brown v. Unified Sch. Dist. 501, Topeka Public Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (applying the Kansas two-year statute of limitations to the plaintiff's § 1981 discriminatory refusal-to-hire claim, rather than § 1658).

[30] *See Jones*, 541 U.S. at 382.

claim would have been heard by a court prior to its 1991 amendment, the state statute of limitations, rather than § 1658, applies.[31]

Defendants rely on a solitary District of Kansas case to support their argument that Plaintiff's claims would be judicially cognizable under the pre-amended version of § 1981. In *Ginwright v. Unified Sch. Dist. No. 457*,[32] Judge Patrick F. Kelly held that a claim of discriminatory nonrenewal of an employment contract was available under the pre-amended version of § 1981, reasoning that "[t]he right to make contracts created by § 1981 would be rendered illusory if . . . an employer . . . is permitted to terminate a contract a few moments after the contract has been in existence."[33] Defendants ask the Court to follow *Ginwright* respecting Plaintiff's Count I claims arguing that "such claims were clearly actionable in this forum prior to the 1991 amendments to § 1981."

*Ginwright*, however, is inapplicable to the case before the Court. Notably, Judge Kelly assumed without deciding that nonrenewal of a contract equals contract termination.[34] If the Court elected to follow *Ginwright*, the Court's reliance would be on a mischaracterization of fact. In Kansas, teacher contracts automatically renew unless "terminated *or* nonrenewed."[35] Defendants themselves argue, and the Court agrees, that the two are not the same.[36] Unlike *Ginwright*, courts

---

[31] *See, e.g. Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1190 (10th Cir. 2002) ("As applied to § 1981, claims that under *Patterson* could be brought under the pre-1991 version of § 1981 clearly arise under an Act of Congress that was enacted prior to § 1658's enactment date, and the catch-all statute does not apply to such claims."), *as amended on denial of reh'g and reh'g en banc* (Nov. 26, 2002).

[32] 756 F. Supp. 1458 (D. Kan. 1991).

[33] *Id.* at 1472.

[34] *See id.* at 1471–72 (addressing the issue as contract "termination" instead of contract nonrenewal).

[35] K.S.A. § 72-2251 (emphasis added).

[36] *See Baldwin v. Bd. of Educ., Unified Sch. Dist. No. 418*, 23 Kan. App. 2d 280, 930 P.2d 18, 22 (1996) ("[T]he distinction between a 'termination' and a 'nonrenewal' is that the former applies where a teacher's

that did confront whether discriminatory nonrenewal claims were actionable under the pre-amended version of § 1981 held that they were not.[37] Instead of equating nonrenewal with termination, courts reasoned that renewal does not create a "new and distinct" employment relationship that contract formation requires.[38] Judge Kelly himself cited this approach a year after *Ginwright*, abandoning his previous analysis.[39] *Ginwright* was no longer the prevailing rule before Judge Kelly, and is not the prevailing rule for this Court. Applying the prevailing rule to this case, renewing Plaintiff's teaching contract in its exact terms certainly would not create a new and distinct employment relationship. Therefore, Plaintiff's wrongful nonrenewal claim is only actionable under the amended version of § 1981.

Even if the Court agreed that nonrenewal equated termination, *Ginwright* remains inapplicable. Judge Kelly conceded that his ruling is minority law.[40] After *Ginwright*, the Tenth Circuit itself rejected such a claim,[41] echoing the overwhelming majority of other circuits at the

---

employment is ended prior to the completion of the contract term during the school year, and the latter applies where the teacher's employment is ended at the conclusion of the school year when the contract expires.").

[37] *See Hull*, 926 F.2d at 509 ("[W]e hold that non-renewal of a contract . . . does not impede plaintiff's right to make or enforce contracts and is not cognizable under [the pre-amended version of] § 1981."); *Gupta v. Madison Metro. Sch. Dist.*, 120 F. App'x 641, 643 (7th Cir. 2005) ("Before the Civil Rights Act of 1991, § 1981 . . . did not cover an action for wrongful discharge or non-renewal of a teacher's contract.").

[38] *See Hull*, 926 F.2d at 509 ("[T]he automatic renewal of plaintiff's contract would not have risen to the level of a new and distinct employment relationship; therefore, non-renewal . . . does not involve contract formation activity."); *cf. Boyd v. Telecable of Overland Park, Inc.*, 752 F. Supp. 388, 391 (D. Kan. 1990) (noting "that section 1981 is implicated only when there is an opportunity for a 'new and distinct relation between the employee and the employer' " in a wrongful termination claim) (quoting *Patterson*, 491 U.S. at 109).

[39] *Jackson v. Boeing Co.*, 1992 WL 42913, at *6 (D. Kan. 1992) (Kelly, J.) ("Failure to renew an employment contract . . . does not violate § 1981 where a new and distinct employment relation is not created") (citing *Hull*, 926 F.2d at 505), *aff'd on other grounds*, *Jackson v. Boeing Co.*, 982 F.2d 528 (table), 1992 WL 372383, at *1 (10th Cir. 1992).

[40] *See Ginwright*, 756 F. Supp. at 1472 ("A minority of district courts have . . . held that § 1981 continues to protect against racially-motivated discharge.") (citations omitted).

[41] *See Trujillo*, 928 F.2d at 975 ("[The plaintiff] contends a claim for discriminatory discharge can be asserted under section 1981. We disagree.").

time. While a plaintiff in 1991 may have had such a claim before Judge Kelly, even other District of Kansas judges at the time rejected such a claim.[42] Overall, Defendants' assertion that "such claims were clearly actionable in this forum" is optimistic, but inaccurate. Therefore, Plaintiff's Count I claims are only actionable under the amended version of § 1981.

Further, in construing Plaintiff's factual allegations in a light favorable to her, it appears that Plaintiff is not simply alleging wrongful nonrenewal of her contract—she is alleging discriminatory retaliation. The amended version of § 1981 created the ability for plaintiffs to pursue retaliation lawsuits under § 1981.[43] To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action.[44]

Count I of Plaintiff's Complaint is titled "Race Discrimination and Retaliation Against [Defendants]." There, Plaintiff alleges that she engaged in protected activity—her complaints to EMS management, the filing of the Charge of Discrimination, and her filed grievance with Jones. Shortly after and because she engaged in protected activity, Plaintiff further alleges that she suffered multiple "Adverse Actions." The alleged adverse employment actions include issuing Plaintiff a negative performance evaluation, dismissing and denying Plaintiff's grievance, and, finally, the nonrenewal of Plaintiff's teaching contract. All these alleged actions took place after her initial employment contract was formed. Plaintiff's Complaint, by both title and substance,

---

[42] *See Boyd*, 752 F. Supp. at 391 (O'Connor, J.); *Dean v. Taco Tico, Inc.*, 1990 WL 78546, at *5 (D. Kan. 1990) (Rogers, J.); *Thomas v. Beech Aircraft Corp.*, 1989 WL 110848, at *2 (D. Kan. 1989) (Reid, J.).

[43] *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 454 (2008) (concluding that § 1981(b), enacted by the 1991 amendment to § 1981, allows for retaliation claims).

[44] *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1183 (10th Cir. 2002).

plausibly alleges discriminatory retaliation. Therefore, her claims are only actionable under the amended version of § 1981.

Because Plaintiff's claims are only available to her under the amended version of § 1981, they are subject to the four-year statute of limitations under § 1658. Accordingly, Plaintiff's Count I claims are not yet barred. Accrual for § 1981 claims brought under § 1983 begins "when the plaintiff knows or should know that his or her constitutional rights have been violated."[45] The earliest alleged adverse employment action, the downgraded performance evaluation, occurred on January 19, 2019. Plaintiff filed her Complaint on November 30, 2022—within the four-year limit. Defendants only dispute which statute of limitations applies to Plaintiff's Complaint and provide no argument that it was not timely filed in the event the four-year limit applies. Therefore, Plaintiff's claims were timely filed.

Accordingly, the Court denies Defendants' Motion as to Defendant Jones. However, Defendant USD 480 further argues that Plaintiff's Count I claims against it are not viable and should be dismissed. The Court now examines USD 480's argument.

**B.    Section 1983 Municipal Liability**

Plaintiff has failed to plausibly allege Defendant USD 480 should be held liable for her Count I claims. Section 1983 states, in relevant part: "Every person who under color of [law] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."[46] And

---

[45] *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citation omitted).

[46] 42 U.S.C. § 1983.

a municipality, including a public school district,[47] may be sued as a "person" under § 1983.[48]  But a school district cannot be sued under § 1983 merely for the acts of its employees through a respondeat superior theory.[49]  Rather, to state a claim for municipal liability under a § 1983 civil rights action, a plaintiff must allege "(1) an official policy or custom, (2) causation, and (3) deliberate indifference."[50]  In its Motion, USD 480 argues Plaintiff has failed to allege facts showing an official policy or custom that establishes its municipal liability.

A plaintiff can allege a policy or custom by pointing to (1) a formal regulation or policy statement, (2) an informal custom that amounts to a widespread practice, (3) decisions of municipal employees with final policymaking authority, (4) ratification by final policymakers of the decisions of subordinates to whom authority was delegated, or (5) the deliberately indifferent failure to adequately train or supervise employees.[51]  Here, Plaintiff relies on methods (3) and (4) in her attempt to establish an official policy or custom at USD 480.

First, Plaintiff argues that USD 480 had official policies and customs by virtue of the decisions made by USD 480 employee Defendant Jones, Principal of EMS.  To support this position, Plaintiff first contends that a suit against Jones in her official capacity is equivalent to a suit against USD 480 by citing to the Tenth Circuit's decision in *Lopez v. LeMaster*.[52]  But

---

[47] *See, e.g. Stoddard v. Sch. Dist. No. 1, Lincoln Cnty., Wyo.*, 590 F.2d 829, 834–35 (10th Cir. 1979) (noting that a school district may be sued as a "person" within the meaning of § 1983).

[48] S*ee Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[49] *See Rubio v. Turner Unified Sch. Dist. No.* 202, 453 F. Supp. 2d 1295, 1301 (D. Kan. 2006) (citing *Monell*, 436 U.S. at 692).

[50] *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020)).

[51] *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017).

[52] 172 F.3d 756, 762 (10th Cir. 1999) ("[The] suit against [the employee] in his official capacity . . . is the equivalent of a suit against [the municipality]."), *abrogated in part on other grounds by Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020).

Plaintiff's Complaint[53] specifies that the suit against Jones is "in her individual capacity," not her official capacity.[54] Further, USD 480 is already a defendant in this case, so there is no need to equate Jones's suit with USD 480's.[55] Accordingly, *Lopez* is inapplicable to Plaintiff's argument.

Plaintiff then points to her Complaint's allegation that Jones "was given final decision-making authority" as to performance evaluations, handling grievances, and nonrenewal of contracts. Plaintiff contends that this assertion satisfies her burden to show that Jones had final policymaking authority at this stage of litigation. Whether an employee has final policymaking authority is a question of state law that must be determined by a judicial examination rather than by a jury.[56] This determination may be made on motion to dismiss.[57] Under Kansas law, final policymaking authority for a school district is vested in its school board.[58] The board appoints officers and employees to serve "at the pleasure of the board."[59] Generally, school principals do not have final policymaking authority because they are constrained by board policies.[60] Under Kansas law, for example, school boards alone possess final policymaking authority regarding

---

[53] *See Johnson v. Oklahoma Dep't of Transp.*, 645 F. App'x 765, 768 (10th Cir. 2016) (analyzing the language of the complaint to determine whether a defendant is being sued in their individual or official capacity).

[54] Pl.'s Compl., Doc 1, at ¶ 3.

[55] *See Lopez*, 172 F.3d at 759 (explaining that the plaintiff brought the suit against the employee, but not the municipality); *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials . . . local government units can be sued directly for damages and injunctive or declaratory relief.") (citations omitted).

[56] *Milligan-Hitt v. Bd. Of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1227 (10th Cir. 2008).

[57] *See Rubio*, 453 F. Supp. 2d at 1298–303 (determining whether school employees had final policymaking authority on motion to dismiss).

[58] *Ware v. Unified Sch. Dist. No. 492, Butler Cnty., State of Kan.*, 902 F.2d 815, 817 (10th Cir. 1990); *Brown v. Keystone Learning Servs.*, 2018 WL 6042592, at *11 (D. Kan. 2018).

[59] K.S.A. § 72-1137.

[60] *See Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 795 (10th Cir. 2014) ("[O]ur cases recognize that school boards, not lower-level administrators, are generally the final policymakers in public school districts because administrators are usually constrained by board-established policies.").

hiring.[61]  Final policymaking authority *can* be delegated,[62] but "[d]elegation must be absolute to give rise to the 'final authority.' "[63]  "If the board retains the authority to review, even though it may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur."[64]

It would be speculative of the Court to conclude that Jones had final policymaking authority based on the Complaint.  The Court recognizes that principals have final "decision-making authority" over numerous school matters, just as Plaintiff alleged here.  But the relevant question is not whether an employee had final "decision-making" authority, it is whether an employee had final "policymaking" authority.[65]  Nowhere in Plaintiff's Complaint does she allege that Jones possessed final policymaking authority.  Even if Plaintiff did so, Kansas law is clear that principals do not possess such authority absent proper delegation.  Further, neither the Complaint nor Plaintiff's Response gives the Court any reason to conclude that the school board wholly delegated its own final policymaking authority to Jones by abandoning its authority to review her decisions.  Therefore, Plaintiff failed to plausibly allege that Jones had final policymaking authority over the challenged actions.

Second, Plaintiff argues that USD 480 had official policies and customs because Jones's actions were ratified by the school board, the final policymaker of USD 480.  Ratification occurs when an employee is given authority to make decisions that are subject to a final policymaker's

---

[61] *See Ware*, 902 F.2d at 818 ("We have found no authority in Kansas law under which a school board has the power to delegate its statutory prerogative to appoint employees to serve at its pleasure.").

[62] *See id.* (citing *City of St Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988)).

[63] *Jantz v. Muci*, 976 F.2d 623, 631 (10th Cir. 1992).

[64] *Id.*

[65] *Rubio*, 453 F. Supp. 2d at 1302.

approval and that policymaker approved both the decision and its basis.[66] Nowhere in the Complaint does Plaintiff allege that USD 480 ratified the decisions made by Jones. This contention only appears in a conclusory footnote of Plaintiff's Response. Although the Complaint states that Jones had decision-making authority, it does not state whether the school board actually approved her decisions or their basis. Again, it would be speculative of the Court to conclude such facts. Therefore, Plaintiff failed to plausibly allege that the school board ratified the challenged actions taken by Jones.

Plaintiff has failed to plausibly allege that there was an official policy of custom at USD 480 that establishes USD 480's municipal liability. Therefore, the Court grants Defendants' Motion to Dismiss in part, dismissing Plaintiff's Count I claims against USD 480.

**IT IS THEREFORE ORDERED** that Defendants (Doc. 6) is **GRANTED IN PART** as to Defendant USD 480 and **DENIED IN PART** as to Defendant Jones.

**IT IS SO ORDERED.**

Dated this 14thth day of July, 2023.

*[signature]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[66] *See Brammer-Hoelter*, 602 F.3d at 1189 (citation omitted).